UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

RONALD KANTIN,

       Plaintiff,

  -v-                                        No.  13 CV 8925-LTS-JCF

METROPOLITAN LIFE INSURANCE
COMPANY,

       Defendant.

-------------------------------------------------------x

### MEMORANDUM OPINION AND ORDER

Plaintiff Ronald Kantin brought this action against Defendant Metropolitan Life Insurance Company ("MetLife"), alleging that he was terminated from his employment with MetLife after engaging in activity protected by Section 806 of the Sarbanes-Oxley Act of 2002 ("SOX"), 18 U.S.C. § 1514A.  The Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331.  Before the Court is MetLife's motion for summary judgment dismissing all of Kantin's claims.  (Docket entry no. 29.)  The Court has considered all of the parties' submissions carefully and, for the reasons that follow, MetLife's motion is granted.

### BACKGROUND

The relevant facts presented here are drawn from the parties' S.D.N.Y. Local Civil Rule 56.1 statements and are uncontested unless otherwise noted.  (See docket entry no. 30 ("MetLife's Rule 56.1 Statement"); docket entry no. 32 ("Kantin's Rule 56.1 Statement").[1])

MetLife is a multinational corporation that provides, among other services and

---

[1]    Citations to the parties' Rule 56.1 Statements incorporate by reference the evidentiary submissions cited therein.

products, life insurance and annuities.  (MetLife's Rule 56.1 Statement, ¶ 1.)  Kantin was employed by MetLife as a Financial Sales Representative from 1979 until 2007, when he retired.  (Id. ¶ 13.)  After retiring, Kantin entered into an independent contractor relationship with MetLife.  (Id. ¶ 20.)  Pursuant to the contract, either party could terminate the agreement by written notice at any time without cause.  (Id. ¶ 22.)

In 2011 and 2012, MetLife offered a form of joint life insurance it called the "guaranteed Legacy Advantage Survivorship Universal Life product," or "GSUL."  (Id. ¶ 35.)  The GSUL product, which was approved by the New York State Department of Insurance, insured two spouses jointly and would pay out a benefit after the death of the longer-surviving spouse.  (Id. ¶¶ 36, 43.)  MetLife priced each couple's GSUL policy based on the combination of their respective genders, ages, and health classifications; each possible combination was referred to as a "cell" of the overall GSUL product.  (Id. ¶ 38.)  Each cell was priced according to actuarial formulas that combined the life expectancies of both spouses.  (Id. ¶ 37.)  The parties dispute the total number of cells of the GSUL product, but agree that it contained no less than one million cells.  (Kantin's Rule 56.1 Statement, ¶ 40.)

MetLife's overall goal in pricing the GSUL cells was to create a return of 10-15% on the entire GSUL product; MetLife understood that not every cell could be customized to create a return within that range.  (MetLife's Rule 56.1 Statement, ¶ 42.)  In 2011 and 2012, Kantin noticed and raised concerns about the pricing of certain cells in the GSUL product.  (Id. ¶ 56; Kantin's Rule 56.1 Statement, ¶ 56.)  Kantin had several meetings with his superiors at MetLife about this issue, but MetLife ultimately did not change the pricing of any GSUL cells in response to Kantin's concerns.  (MetLife's Rule 56.1 Statement, ¶¶ 65-82.)

The concerns Kantin raised related primarily to whether MetLife would lose

money if the cells were improperly priced. (Kantin's Rule 56.1 Statement, ¶ 64.) During the time he was employed by MetLife, Kantin did not tell any of his supervisors that he believed the pricing of the GSUL cells was illegal. (See generally MetLife's Rule 56.1 Statement, ¶¶ 65-82 (summarizing conversations).) In his deposition taken for this case, Kantin stated for the first time that he believed it would have been illegal for him to sell a particular GSUL policy, a cell where a wife was 28 years younger than her husband, rather than selling the wife an individual policy, given that the individual policy would have a lower premium.[2] (Id. ¶¶ 86-91, 93.) Kantin did not personally ever sell this product and had no knowledge indicating that it was ever sold. (Id. ¶ 91.) Moreover, while Kantin's articulated concerns about legality related solely to selling the GSUL policy "to the much younger woman" (id. ¶ 90), the GSUL policy in question would cover two people and would provide a higher cash value than a single life insurance policy covering only the woman (id. ¶ 93).

In addition to these concerns about the GSUL policy, Kantin raised concerns prior to his termination about a certain commission payment and about a conversation with one Felix Malitsky. (Id. ¶¶ 116-21.) Kantin did not believe that either situation involved actual or potential illegal activity. (Id. ¶ 119, 121.)

Kantin was notified in writing on September 27, 2012, without prior warning, that his contract with MetLife was being terminated. (Id. ¶ 143.)

---

[2] In his counter-Rule 56.1 statement, Kantin objects to MetLife's statement that Kantin stated for the first time at his deposition that the 28-year-difference cell would have been illegal to sell. (Kantin Rule 56.1 Statement, ¶ 90-91.) However, Kantin provides no factual support for his implicit assertion that he had made an earlier complaint of illegality. A party may not create an issue of material fact on summary judgment based on objections that lack factual support in the record. Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005).

DISCUSSION

A motion for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). By contrast, if "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial," and summary judgment is appropriate. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The burden of demonstrating that no genuine dispute of material fact remains rests initially on the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant can do so, the nonmoving party must present specific facts demonstrating that there is a genuine issue for trial, which cannot be done merely through "[c]onclusory allegations, conjecture, and speculation." Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (citations and internal quotation marks omitted). In determining whether a genuine dispute of material fact exists, the Court draws all inferences in favor of the nonmoving party. Scott v. Harris, 550 U.S. 372, 380 (2007).

Section 806 of SOX protects employees against retaliation where they have provided information to their supervisors that the employees "reasonably believe[] constitutes a violation of [18 U.S.C.] section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule or regulation of the Securities and Exchange Commission ["SEC"], or any provision of Federal law relating to fraud against shareholders . . . ." 18 U.S.C.S. § 1514A(a)(1) (LexisNexis 2008). To invoke the protection of Section 806, an employee "must

show by a preponderance of the evidence that (1) [he] engaged in protected activity; (2) the employer knew of the protected activity; (3) [he] suffered an unfavorable personnel action; and (4) circumstances exist to suggest that the protected activity was a contributing factor to the unfavorable action." Fraser v. Fiduciary Trust Co. Int'l, 2009 WL 2601389, at *4 (S.D.N.Y. Aug. 25, 2009).

Kantin's lawsuit fails because he cannot, as a matter of law, establish the first element of his SOX claim. In order for an employee's activity to fall under the protections of Section 806, the "employee's complaint must definitively and specifically relate to one of the six enumerated categories" of unlawful activity contained in that section. Id., at *5 (citing Allen v. Admin. Rev. Bd., 514 F.3d 468, 476-77 (5th Cir. 2008)). "A whistleblower must state particular concerns which, at the very least, reasonably identify a respondent's conduct that the complainant believes to be illegal." Lerbs v. Buca Di Beppo, Inc., 2004 WL 5030304, at *11 (U.S.D.O.L. June 15, 2004). The employee's belief that his employer's conduct was unlawful under one of the six enumerated Section 806 categories must be both objectively and subjectively reasonable. Marshall v. Northrup Grumman Synoptics, 2005 WL 4889013, at *2 (U.S.D.O.L. June 22, 2005).

The vast majority of the allegations Kantin raises do not relate to conduct that Kantin subjectively believed to be unlawful, and therefore these allegations cannot support a claim under Section 806 as a matter of law. See Gale v. U.S. Dep't of Labor, 384 Fed. App'x 926, 930 (11th Cir.2010) (denying Section 806 protections where the plaintiff admitted at his deposition that he "did not actually believe that WFG's activities were illegal or fraudulent" and therefore lacked the requisite subjective belief of fraud or illegality); Livingston v. Wyeth, Inc., 520 F.3d 344, 352 (4th Cir. 2008) ("It would make no sense to allow [a plaintiff] to proceed if he

himself did not hold the belief required by the statute . . . .").

Kantin has made only one allegation relating to activity that he considers subjectively unlawful, and he did not communicate that belief until his deposition was taken in this matter. Kantin testified that he believes that the pricing of the 28-year-difference GUSL cell rendered it unlawful for him to sell the younger wife that policy, as opposed to an individual life insurance policy.

Kantin's report of this concern is not covered by Section 806 for two distinct reasons. First, Kantin admits that he did not actually ever sell such a policy, nor was he aware of any instance where such a policy was sold. Section 806 covers reports of activity – not the potential for activity, or the possibility of activity – that is fraudulent or unlawful. An employee's report of the mere potential for fraud or unlawful activity is not covered by the plain language of the statute, and reasonably so, as arguments for the 'potential' for fraud could be made regarding a wide range of corporate activities, rendering the statute hopelessly broad. The protections of Section 806 do not extend to allegations of such speculative "future contingenc[ies]." Livingston, 520 F.3d at 352. Absent evidence that Kantin believed that some unlawful activity was actually occurring or was likely to occur, his claims do not fall under the protection of SOX.

Second, even if Kantin's concerns regarding the profitability for the company of some of the cells' pricing were more than speculative, they do not relate to a matter that rises to the level of fraud, and are thus insufficient to frame the requisite allegation of criminally fraudulent activity. MetLife makes clear that its pricing of the GSUL product was not designed to ensure that every cell would yield a particular rate of return (MetLife Rule 56.1 Statement, ¶ 42), and that pricing of the GSUL produce cells was an iterative process because actual returns

could differ from expected returns (id., ¶¶ 44-45).  The single pricing anomaly identified by Kantin was investigated by numerous MetLife employees and ultimately determined to be within the overall acceptable profitability range for the GSUL product, a conclusion Kantin does not dispute.  (Id., ¶¶ 78-79; compare Kantin's Rule 56.1 Statement, ¶¶ 78-79.)  Given the size of the GSUL product as a whole relative to MetLife's overall business, a small aberration in one GSUL cell's possible profitability is plainly immaterial and does not give rise to an objectively plausible concern regarding shareholder fraud.  See Nielsen v. AECOM Tech. Corp., 762 F.3d 214, 223 (2d Cir. 2014) (denying Section 806 claim where the "connection between [plaintiff's] claims and supposed fraud against shareholders is simply too tenuous" because of the lack of allegations "that the misconduct he reported would have significant repercussions for [the company] or, by extension, its shareholders").

Kantin's claims under Section 806 thus fail as a matter of law, and summary judgment in MetLife's favor is warranted.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted.  This memorandum opinion and order resolves docket entry no. 28.

The Clerk of Court is respectfully requested to enter judgment in favor of Defendant and close this case.

SO ORDERED.

Dated: New York, New York
       March 14, 2016

      /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge